### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAWNLYN LITZ**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:10cv1407 |
| | ) | **Electronic Filing** |
| **MICHAEL J. ASTRUE**, | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY**, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

**I.     INTRODUCTION**

Plaintiff Dawnlyn Litz ("Litz") brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying her applications for disability insurance benefits ("DIB") and

supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act

("Act"), 42 U.S.C. §§ 401-433, 1381-1383f.  The parties have filed cross-motions for summary

judgment pursuant to Federal Rule of Civil Procedure 56, and the record has been developed at

the administrative level.  For the reasons that follow, the motion for summary judgment filed by

Litz (*ECF No. 14*) will be granted, and the motion for summary judgment filed by the

Commissioner (*ECF No. 16*) will be denied.  The decision of the Commissioner will be reversed,

and the case will be remanded to him solely for the purpose of calculating the amount of benefits

owed to Litz.

## II.    PROCEDURAL HISTORY

Litz initially filed applications for DIB and SSI benefits on August 21, 2000.  R. 371.

The applications were denied by Pennsylvania's Bureau of Disability Determination, and Litz

filed a request for an administrative hearing.  R. 371.  On February 20, 2002, a hearing was held

in Pittsburgh, Pennsylvania, before Administrative Law Judge James S. Bukes (the "ALJ").  R.

371.  In a decision dated May 20, 2002, the ALJ determined that Litz was not "disabled" within

the meaning of the Act.  R. 371-389.  Litz responded by filing a request for review with the

Appeals Council.  The Appeals Council denied Litz's request for review on August 28, 2002,

thereby making the ALJ's decision the final decision of the Commissioner.  R. 14.  Litz

apparently took no further action with respect to those applications.

On August 26, 2002, Litz protectively filed new applications for DIB and SSI benefits,

alleging that she had become disabled on April 16, 1998.  R. 418-421, 787-790.  The

applications were administratively denied on June 27, 2003.  R. 394, 792.  Litz responded on

August 11, 2003, by filing a timely request for an administrative hearing.  R. 398.  A hearing was

held before the ALJ on September 1, 2004.  R. 38.  Testimony was provided by Litz and Joseph

Kuhar ("Kuhar"), an impartial vocational expert.  R. 40-70.  Since the ALJ's decision denying

Litz's earlier claims was given preclusive effect, the subsequent claims were considered only

with respect to the period of time commencing on May 21, 2002.  R. 15.  The ALJ denied Litz's

applications in a decision dated October 15, 2004.  R. 14-21.

On December 15, 2004, Litz filed a request for review with the Appeals Council.  R. 796-

799.  The request for review was denied on April 26, 2005, and the ALJ's decision became the

final decision of the Commissioner.  R. 6.  Litz commenced an action against the Commissioner

in this Court on June 30, 2005, seeking judicial review of the Commissioner's decision.  In a

memorandum opinion and order dated October 19, 2006, Judge William L. Standish vacated the Commissioner's decision and remanded the case for further consideration of Litz's claims.  R. 848-888.  On November 2, 2006, the Appeals Council remanded the case to the ALJ for a new hearing.  R. 847.

A hearing was held before the ALJ in Grove City, Pennsylvania, on August 23, 2007.  R. 1121.  Litz, who was represented by counsel, appeared and testified at the hearing.  R. 1124-1152.  George Starosta ("Starosta"), an impartial vocational expert, also testified at the hearing. R. 1153-1159.  In a decision dated December 27, 2007, the ALJ determined that Litz had not been "disabled" within the meaning of the Act at any point subsequent to May 20, 2002.  R. 824-839.

Litz filed a request for review on January 25, 2008.  R. 823.  The Appeals Council denied the request for review on August 23, 2010, and the ALJ's decision denying Litz's claims became the final decision of the Commissioner in this case.  R. 810-813.  Litz commenced this action on October 25, 2010, seeking judicial review of the Commissioner's decision.  ECF Nos. 1-3.  Litz and the Commissioner filed motions for summary judgment on May 25, 2011, and June 27, 2011, respectively.  ECF Nos. 14 & 16.  These motions are the subject of this memorandum opinion.

## III.    STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law.  *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999).  With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence."  42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).  The Court may not undertake a *de novo* review of the Commissioner's decision

or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v.*

4

*Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983).  The administrative

law judge must consider all medical evidence contained in the record and provide adequate

explanations for disregarding or rejecting evidence.  *Weir on Behalf of Weir v. Heckler*, 734 F.2d

955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated

rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose

of determining whether a claimant is "disabled" within the meaning of the Act.  The United

States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will
> not review the claim further.  At the first step, the agency will find non-disability
> unless the claimant shows that he is not working at a "substantial gainful
> activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the SSA will find
> non-disability unless the claimant shows that he has a "severe impairment,"
> defined as "any impairment or combination of impairments which significantly
> limits [the claimant's] physical or mental ability to do basic work activities."  §§
> 404.1520(c), 416.920(c).  At step three, the agency determines whether the
> impairment which enabled the claimant to survive step two is on the list of
> impairments presumed severe enough to render one disabled; if so, the claimant
> qualifies.  §§ 404.1520(d), 416.920(d).  If the claimant's impairment is not on the
> list, the inquiry proceeds to step four, at which the SSA assesses whether the
> claimant can do his previous work; unless he shows that he cannot, he is
> determined not to be disabled.  If the claimant survives the fourth stage, the fifth,
> and final, step requires the SSA to consider so-called "vocational factors" (the
> claimant's age, education, and past work experience), and to determine whether
> the claimant is capable of performing other jobs existing in significant numbers in
> the national economy.  §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes

omitted).

In an action in which review of an administrative determination is sought, the agency's

decision cannot be affirmed on a ground other than that actually relied upon by the agency in

making its decision.  In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67

S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law.  That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.  If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.  To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.  The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context.  *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001).  Thus, the Court's review is limited to the four corners of the ALJ's decision.  *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D. Pa. 2005).


## IV.    THE ALJ'S DECISION

In his decision, the ALJ determined that Litz had not engaged in substantial gainful activity on or after May 21, 2002.  R. 829.  Litz was found to be suffering from a major depressive disorder, an anxiety disorder with panic attacks, myofascial pain syndrome with peripheral polyneuropathy, degenerative disc disease, and carpal tunnel syndrome.  R. 829-830.  Although her degenerative disc disease and carpal tunnel syndrome were deemed to be "non-severe" impairments, her remaining impairments were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii) and 416.920(c).  R. 829-830.  The ALJ concluded that these impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing").  R. 830-832.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Litz's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except that she must work in a setting involving few changes; cannot engage in direct interaction with the public; can make only simple decisions and follow only simple instructions; cannot work at unprotected heights or in the presence of excessive vibration; can stand and walk for six out of eight hours, an hour or two at a time and can occasionally bend, crouch, stoop, climb, crawl, and kneel but can sit without limitation; and cannot work at an assembly-line type of pace.

R. 832. Litz had "past relevant work"[1] experience as a census-taker supervisor, teacher's aide, retail sales clerk, counselor and sales representative. R. 838. In response to a hypothetical question describing an individual with the limitations identified by the ALJ, Starosta testified that such an individual could not perform the work that had previously been performed by Litz. R. 1154. Therefore, it was determined that Litz could not return to her past relevant work. R. 837-838.

Litz was born on July 31, 1967, making her 34 years old on May 21, 2002. R. 838, 1124. She was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). She had more than a high school education[2] and an ability to communicate in English. R. 838, 1124-1125; 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Litz could work as a mail clerk. R. 838. Starosta's testimony established that this

---

[1] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[2] Litz testified that she had a bachelor of science degree in elementary education with a special emphasis on psychology. R. 1124-1125. The documentary record indicates that she obtained the degree at Slippery Rock University of Pennsylvania. R. 572, 921.

job existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).[3]  R. 1154.


## V.   MEDICAL EVIDENCE

Litz was surgically treated for cervical cancer in October 1992.  R. 528.  She has a

"history of experiencing intermittent numbness and tingling in the fingers of both hands."  R.

528.  These symptoms increased in severity when she was pregnant with her youngest child.  R.

528.  The child was delivered on July 2, 2001.  R. 528.  Nerve conduction studies performed on

September 8, 2001, revealed "no electrical findings for carpal tunnel syndrome, polyneuropathy,

or cervical radiculopathy."  R. 530.  Litz continued to experience "numbness in her hands and

feet" during the fall of 2001.  R. 572.  She reported on October 23, 2001, that it was difficult for

her to hold her daughter.  R. 572.  She also complained of frequent headaches.  R. 572.

On January 8, 2002, Litz underwent an electromyography ("EMG") to evaluate

"peripheral neuropathy symptoms" in her hands and feet.  R. 531.  No "large fiber peripheral

neuropathy" was identified during the EMG.  R. 531.  Nonetheless, Dr. George A. Small

reported that a "small fiber peripheral neuropathy" could not be ruled out.  R. 531.

Litz received treatment for her psychiatric impairments at the Irene Stacy Community

Mental Health Center ("Irene Stacy").  R. 672.  Dr. Bryan Norton was her treating psychiatrist,

and Jan Hines ("Hines") was her treating therapist.  R. 677.  On February 4, 2002, Dr. Norton

and Hines opined that Litz had a "moderate" degree of limitation in her activities of daily living

---

[3] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy."  *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003).  This burden is commonly satisfied by means of vocational expert testimony.  *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

and a "marked" degree of limitation in her social functioning.  R. 677.  They also indicated that, in a work setting, Litz's impairments would cause "frequent" deficiencies in her concentration, persistence or pace and "repeated" episodes of decompensation.  R. 677.  Dr. Norton and Hines stated that while Litz could make basic decisions "with very few problems," the "presence of stress" would decrease her ability to make decisions effectively.  R. 681.

Dr. Edward Jonas, a nonexamining psychiatric consultant, reviewed Litz's medical records in connection with her applications for DIB and SSI benefits.  He opined on October 25, 2002, that Litz had no severe mental impairments.  R. 577.  Dr. Jonas indicated that while Litz had a "mild" degree of limitation in her maintenance of social functioning, she had no limitations in her activities of daily living and maintenance of concentration, persistence or pace.  R. 587.  It was further noted that Litz had experienced no extended episodes of decompensation.  R. 587. In a subsequent report dated November 18, 2002, Dr. Jonas reiterated his view that Litz had no severe mental impairments.  R. 591.  In that report, however, he indicated that Litz had a "mild" degree of limitation in her maintenance of concentration, persistence or pace.  R. 601.  Dr. Jonas' other findings mirrored those contained in his earlier report.  R. 591, 601.  His second report was co-signed by Dr. Roger Glover on June 18, 2003.  R. 591.

Dr. Dennis M. Demby performed a consultative physical examination of Litz on May 30, 2003.  R. 652-653.  Litz complained of back pain and migraine headaches.  R. 652.  After completing his examination, Dr. Demby reported that Litz's lifting, carrying, standing, walking, sitting, pushing and pulling abilities were not limited by her impairments.  R. 653.  No postural or environmental limitations were identified.  R. 653.

On June 20, 2003, a bone spur was surgically removed from Litz's right heel.  R. 726.

Three days later, a nonexamining medical consultant[4] opined that Litz was capable of performing

a range of "medium"[5] work activities involving limited handling, fingering or feeling, only

occasional balancing, stooping, kneeling, crouching or crawling, and no climbing.  R. 654-661.

The consultant stated that Litz's physical limitations were attributable to her peripheral

neuropathy.  R. 655-657.

Litz sought treatment from Dr. Manoj Lekhwani, a psychiatrist affiliated with Family

Psychological Associates, Ltd., on August 12, 2003.  R. 751-753.  She complained of persistent

depression and anxiety.  R. 751.  Dr. Lekhwani determined that Litz was suffering from a major

depressive disorder and an anxiety disorder.  R. 752.  He assigned her an unspecified Global

Assessment of Functioning ("GAF") score falling between 50 and 60.[6]  R. 752.

On October 17, 2003, Litz underwent a "[l]eft transcanal tympanoplasty with ossicular

reconstruction and fascia graft."  R. 698.  The operation was performed at Butler Memorial

Hospital by Dr. Keith B. Welker.  R. 698.  The purpose of the procedure was to alleviate

"[c]onductive hearing loss" in Litz's left ear.  R. 698.  After a follow-up examination conducted

on March 30, 2004, Dr. Welker reported that Litz's eardrum looked "nice and stable," and that

her prosthesis was "in good position."  R. 1029.

Dr. Lekhwani and Kristin A. McLaren ("McLaren"), Litz's treating therapist, detailed

Litz's mental limitations in a "psychiatric activities assessment" dated August 25, 2004.  R. 754-

---

[4] The name of the nonexamining medical consultant is illegible.  R. 661.

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

[6] The GAF scale "assesses how well an individual can function according to psychological, social, and occupational parameters, with the lowest scores assigned to individuals who are unable [to] care for themselves."  *Pounds v. Astrue*, 772 F.Supp.2d 713, 716, n. 2 (W.D. Pa. 2011).

764.  They indicated that Litz had a "marked" degree of limitation in her activities of daily living and maintenance of social functioning.  R. 764.  They further opined that Litz would have "frequent" deficiencies of concentration, persistence or pace in a work setting, and that she would experience "repeated episodes of decompensation."  R. 764.  Dr. Lekhwani and McLaren stated that Litz's impairments would essentially preclude her "regular participation in meaningful daily employment."  R. 760.

Litz sought treatment at Butler Memorial Hospital for nausea and vomiting on December 2, 2004.  R. 985-986.  During the course of a 23-hour admission, it was determined that she was suffering from actue gastroenteritis.  R. 985.  When she left the hospital, Litz's symptoms were no longer present.  R. 985.  She was advised that her symptoms could potentially recur and progress to diarrhea.  R. 985-986.

During the first half of 2005, Litz continued to experience stomach problems.  She underwent an endoscopy on May 18, 2005.  R. 970.  "[N]o signs of inflammation, ulceration or bleeding" were detected.  R. 970.  After the procedure, Dr. Donald A. Walters reported that Litz's esophagus, stomach and duodenum were normal.  R. 970.  In a subsequent letter to Dr. Robert McNerney, Litz's primary care physician, Dr. Walters recommended that Litz treat her condition with an over-the-counter proton pump inhibitor.  R. 1022.

Litz frequently experienced "irregular and heavy vaginal bleeding" during the summer of 2005.  R. 962.  It was ultimately determined that she had an epithelial lesion on her cervix.  R. 968.  She underwent a Loop electrocautery excision procedure on June 22, 2005.  R. 968.  Nevertheless, her menstrual cycles continued to involve the "passage of large clots" and "heavy cramping."  R. 962.  On August 17, 2005, a total abdominal hysterectomy was performed to alleviate Litz's gynecological problems.  R. 962-966.

Dr. McNerney referred Litz to Eagle Physical Therapy ("Eagle") after determining that she had a lumbosacral strain. R. 1023. Litz was evaluated at Eagle on February 8, 2006. R. 1023. She reported that she had strained her back while trying to restrain her son. R. 1023. Litz also stated that she had experienced difficulties while trying to bend forward or get out of a chair after sitting for long periods of time. R. 1023.

Litz went to Allegheny General Hospital on August 4, 2006, to undergo nerve conduction studies. R. 1116. The studies yielded normal results. R. 1116. No "electrodiagnostic evidence of large-fiber peripheral neuropathy" was found. R. 1116.

Dr. Welker evaluated Litz on August 15, 2006. R. 1087. Litz complained of intermittent hoarseness in her voice. R. 1087. An endoscopic examination of her larynx revealed that her vocal cords were "free of nodules" and "worrisome lesions." R. 1087. Her thyroid functions were found to be normal. R. 1087. Dr. Welker advised that Litz's voice problems were attributable to acid reflux and instructed her to seek aggressive treatment for that condition. R. 1087.

On August 29, 2006, Litz was evaluated by Dr. Rajendra Nigam, a psychiatrist, and Lynn Mainolfi ("Mainolfi"), a therapist. R. 1107-1108. She complained of "racing thoughts," "poor sleep," a "depressed mood," "compulsive behavior" and "panic attacks." R. 1107. Dr. Nigam and Mainolfi characterized Litz's mood as "depressed, anxious and irritable." R. 1108. Litz was assigned a GAF score of 55. R. 1108.

Dr. Devashis A. Mitra evaluated Litz on October 20, 2006, to determine whether she was suffering from fibromyalgia. R. 1012. Since the examination detected a "reduced number of tender points," Dr. Mitra reported that the specific criteria for fibromyalgia had not been

satisfied.  R. 1012.  Litz was provided with pain medications and instructed not to drive while experiencing dizziness or drowsiness.  R. 1012.

Dr. Samuel I. Han performed a consultative physical examination of Litz on December 19, 2006.  R. 911-919.  Although the examination uncovered no evidence of muscular atrophy or motor deficit, Dr. Han observed that Litz's symptoms were "suggestive of peripheral neuropathy."  R. 913.  He indicated that Litz could perform a range of "light"[7] work activities involving only occasional postural maneuvers and limited exposure to moving machinery, vibration and heights.  R. 915-917.

Dr. Julie Uran, a psychologist, performed a consultative evaluation of Litz on January 17, 2007.  R. 921-930.  The evaluation revealed that Litz was suffering from post-traumatic stress disorder stemming from abuse perpetrated by her brother.  R. 922-923, 925.  The Beck Depressive Inventory was used to "objectively" assess her depressive symptomatology.  R. 925.  Dr. Uran stated that Litz's composite score of 36 was suggestive of "severe symptomology in comparison to a norming population."  R. 925.  Dr. Uran indicated that Litz was "markedly" limited in her ability to respond appropriately to work pressures in a usual work setting and "moderately" limited in her abilities to understand, remember and carry out detailed instructions, make judgments concerning simple, work-related decisions, interact appropriately with members of the general public, and respond appropriately to changes in a routine work setting.  R. 928. No limitations were found with respect to Litz's abilities to understand, remember and carry out short, simple instructions and interact appropriately with supervisors and co-workers.  R. 928.

---

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).

On January 18, 2007, Dr. Rodger W. Althoff surgically removed a tumor from Litz's left buttock. R. 949. The tumor, which was the same size as an orange or a tennis ball, had been present on Litz's left buttock for approximately 14 months. R. 949, 953, 1010. Litz tolerated the procedure well. R. 949.

## VI.    DISCUSSION

Litz was apparently awarded SSI benefits after filing a subsequent application on April 8, 2008. ECF No. 15 at 3. The issue in the present case is whether the Commissioner's determination that Litz was not disabled between May 21, 2002, and December 27, 2007, is "supported by substantial evidence." 42 U.S.C. § 405(g). Litz was insured for benefits under Title II only through March 31, 2005. R. 829. Therefore, she must demonstrate that she was disabled on or before that date in order to establish her entitlement to Title II benefits. 42 U.S.C. § 423(c)(1).

In support of her motion for summary judgment, Litz advances two basic arguments. First, she contends that the ALJ erred in determining that she was not *per se* disabled under Listings 12.04 and 12.06. ECF No. 15 at 15-36. Second, she maintains that the ALJ's residual functional capacity assessment (and corresponding hypothetical questions to Starosta) did not account for all of the limitations caused by her impairments. These issues will be addressed in sequential order.

The Listing of Impairments describes impairments which render a claimant *per se* disabled without regard to his or her age, education, or past work experience. *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). In order to qualify as *per se* disabled under the Commissioner's regulations, a

14

claimant must demonstrate that his or her impairment (or combination of impairments) either "matches" a Listing or is "equivalent" to a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). An impairment "matches" a Listing only if it satisfies *all* of the relevant medical criteria. *Id.* at 530. An impairment is "equivalent" to a Listed Impairment only if it is supported by medical findings equal in severity to *all* of the criteria applicable to the most similar Listing. *Id.* at 531. The claimant bears the burden of presenting evidence to support his or her allegation of *per se* disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

In his decision of October 15, 2004, the ALJ stated that Litz's impairments did not meet or medically equal a Listed Impairment without explaining his reasoning or identifying the specific Listings under consideration. R. 18. The ALJ's abbreviated analysis was insufficient to facilitate meaningful judicial review. Relying on *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 119-120 (3d Cir. 2000), Judge Standish set aside the ALJ's decision and remanded the case to the Commissioner for further administrative proceedings. R. 862-868, 887-888. The Commissioner was directed to weigh the opinions of *per se* disability expressed by Dr. Norton and Dr. Lekhwani against the contrary opinions expressed by Dr. Jonas and Dr. Glover. R. 887-888.

The disagreement between the parties centers on the "B" criteria of Listings 12.04 and 12.06.[8] In order to satisfy the "B" criteria, Litz must establish that her mental impairments result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation, each of extended

---

[8] The Commissioner does not appear to dispute that Litz's impairments satisfy the "A" criteria. ECF No. 17 at 14.

duration.  20 C.F.R. Part 404, Subpart P, Appendix 1, Listings 12.04 & 12.06.  On February 4,

2002, Dr. Norton reported that Litz had a "moderate" degree of limitation in her activities of

daily living and a "marked" degree of limitation in her maintenance of social functioning.  R.

677.  He further predicted that, in a typical work environment, Litz's mental impairments would

cause her to suffer "frequent" deficiencies of concentration, persistence or pace and experience

"repeated" episodes of decompensation.  R. 677.  Dr. Lekhwani expressed a similar opinion on

August 25, 2004.  R. 764.  Unlike Dr. Norton, however, Dr. Lekhwani indicated that Litz had a

"marked" degree of limitation in her activities of daily living.  R. 764.  The opinions provided by

Dr. Norton and Dr. Lekhwani, if credited, would warrant a finding of *per se* disability under

Listings 12.04 and 12.06.

The issue of *per se* disability is reserved for the Commissioner's determination.  20

C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).  The ALJ was not required to accept the conclusions

put forth by Dr. Norton and Dr. Lekhwani concerning the "B" criteria of the relevant Listings.

*Valder v. Barnhart*, 410 F.Supp.2d 134, 140 (W.D.N.Y. 2006).  In determining that Litz's

impairments did not satisfy the "B" criteria, the ALJ relied on the examination report supplied by

Dr. Uran.  R. 832.  Dr. Uran did not find Litz's activities of daily living to be significantly

limited.  According to Dr. Uran, Litz was capable of performing routine chores that did not

involve strenuous activity or the lifting of heavy objects.  R. 926.  With respect to the category of

social functioning, Dr. Uran indicated that Litz had the social maturity to deal appropriately with

authority figures, co-workers and peers.  R. 926-927.  It was noted that she distrusted only

members of the general public.  R. 927.  Nothing in the record suggests that Litz has experienced

extended episodes of decompensation.  Even if it is assumed that Litz had a "marked" degree of

limitation with respect to her maintenance of concentration, persistence or pace, the findings

contained in Dr. Uran's examination report provided the ALJ with a sufficient basis for

concluding that Litz's impairments did not satisfy the "B" criteria of Listings 12.04 and 12.06.

R. 832, 926-927.  Furthermore, it was the prerogative of the ALJ to credit Dr. Uran's opinion

over those provided by Dr. Norton and Dr. Lekhwani.  *Diaz v. Commissioner of Social Security*,

577 F.3d 500, 505 (3d Cir. 2009)(recognizing an administrative law judge's freedom "to choose

the medical opinion of one doctor over that of another").  For these reasons, no basis exists for

setting aside the ALJ's determination at the third step of the sequential evaluation process.

Litz also challenges the ALJ's residual functional capacity finding.  ECF No. 15 at 36-37.

The ALJ accommodated the physical limitations identified in Dr. Han's examination report by

limiting Litz to a range of "light" work activities involving no exposure to unprotected heights or

excessive vibration and only occasional postural maneuvers.[9]  R. 832, 915-917.  He also

accounted for the "moderate" limitations noted in Dr. Uran's examination report by limiting Litz

to work involving only short, simple instructions, few workplace changes, and no direct

interaction with members of the general public.  R. 832, 928.  The only remaining question is

whether the ALJ's preclusion of work performed "at an assembly-line type of pace" was

sufficient to accommodate Litz's other limitations.

Dr. Uran reported that Litz had a "marked" degree of limitation in her ability to

"[r]espond appropriately to work pressures in a usual work setting."  R. 928.  At the hearing,

Starosta testified that all jobs existing in significant numbers in the national economy involved

some level of stress.  R. 1156-1157.  Under the Commissioner's regulations, only an "extreme"

degree of limitation is conclusively "incompatible with the ability to do any gainful activity."  20

C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).  When questioned by Litz's counsel about whether

---

[9] No physical limitations were identified in Dr. Demby's examination report of May 30, 2003.  R.
653.

the limitation described by Dr. Uran would preclude an individual from engaging in substantial gainful activity, Starosta expressed uncertainty as to what Litz's counsel (and Dr. Uran) meant by a "marked" limitation.  R. 1156.

The "marked" limitation identified by Dr. Uran can only be understood by reference to her accompanying examination report.  Under a heading entitled "concentration and task persistence," Dr. Uran reported that Litz would be overwhelmed if she needed to follow instructions, maintain a regular schedule, complete a task from beginning to end, or work at a consistent pace.  R. 927.  It was further noted that Litz needed "extended time" to complete tasks.  R. 927.  Dr. Uran apparently assessed Litz's depressive symptomatology by using the Beck Depression Inventory.  According to Dr. Uran, Litz's composite score of 36 was indicative of "severe symptomology in comparison to a norming population."  R. 925.  Dr. Uran described Litz's prognosis as "poor in terms of higher level functioning and personality integration."  R. 925.  The statements contained in Dr. Uran's examination report were simply not suggestive of an individual who was capable of engaging in substantial gainful activity.[10]

The ALJ did not adequately convey the nature of Litz's mental limitations by describing an individual who could not work "at an assembly-line type of pace."  R. 832, 1155; *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004).  Dr. Norton, Dr. Lekhwani and Dr. Nigam consistently found Litz to be disabled during the relevant period of time.  R. 672-682, 754-764, 1078-1084.  Although Dr. Uran's examination findings provided the ALJ with an adequate basis for rejecting the conclusions of Dr. Norton and Dr. Lekhwani with respect to Listings 12.04 and 12.06, they did not provide him with an adequate basis for finding that Litz could maintain a full-

---

[10] Dr. Uran's examination report can be considered for the purpose of determining whether Litz was disabled on or before March 31, 2005, even though it was completed subsequent to that date. *Reilly v. Office of Personnel Management*, 571 F.3d 1372, 1381-1382 (Fed.Cir. 2009).

time job.  R. 927-928.  Starosta testified that, in virtually any work environment, an employee

must be able to handle the stress associated with his or her "need to meet expectations."  R.

1157.  Dr. Uran described Litz as an individual who would be overwhelmed by the stress of a

typical work environment.  R. 927-928.

The Court acknowledges that the opinion of a treating physician does not invariably

control the question of whether a claimant retains the residual functional capacity to perform the

duties of a full-time job.  *Brown v. Astrue*, 649 F.3d 193, 196, n. 2 (3d Cir. 2011).  The ALJ,

however, was not free to draw speculative inferences from medical reports or employ his own

expertise against that of Litz's treating psychiatrists and Dr. Uran.  *Plummer v. Apfel*, 186 F.3d

422, 429 (3d Cir. 1999).  The opinions of Dr. Jonas and Dr. Glover were not referenced by the

ALJ in support of his residual functional capacity assessment.  R. 832-837.  Even if the ALJ had

relied on those opinions, it is unlikely that they would have provided him with a sufficient basis

for rejecting the contrary opinions of three treating psychiatrists and one consultative examiner.

*Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008)(remarking

that "a longtime treating physician's opinion carries greater weight than that of a non-examining

consultant").

The Commissioner's decision denying Litz's applications for DIB and SSI benefits is not

"supported by substantial evidence."  42 U.S.C. § 405(g).  The only thing that needs to be

determined is whether an immediate award of benefits is justified, or whether a remand for

further proceedings is the appropriate remedy.[11]  A judicially-ordered award of benefits is

warranted only where "the evidentiary record has been fully developed," and where "the

---

[11] The applicable statutory provision provides the Court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled."
*Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010).  That standard is satisfied in this

case.  Litz's allegation of disability is supported by the opinions of three treating psychiatrists

and one consultative examiner.  R. 672-682, 754-764, 921-930, 1078-1084.  No medical provider

who treated or examined Litz during the relevant period of time believed her to be mentally[12]

capable of engaging in substantial gainful activity.  Litz's claims date back to May 21, 2002, and

have been the subject of a previous remand.  *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir.

2000)(recognizing prior delays and remands as factors weighing in favor of an immediate award

of benefits).  Litz was apparently found to be "disabled" after filing a subsequent application for

SSI benefits.  ECF No. 15 at 3.  Since several years have passed since the expiration of her

insured status under Title II on March 31, 2005, and the issuance of the ALJ's decision on

December 27, 2007, there is no reasonable likelihood that further administrative proceedings

would result in the submission of additional probative evidence.  A remand for further

consideration of Litz's claims would clearly be unreasonable under the present circumstances.

*Podedworny v. Harris*, 745 F.2d 210, 221-222 (3d Cir. 1984).  Consequently, the decision of the

Commissioner will be reversed, and the case will be remanded to him solely for the purpose of

calculating the amount of DIB and SSI benefits owed to Litz.


## VII.   CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by Litz (*ECF No. 14*)

will be granted, and the motion for summary judgment filed by the Commissioner (*ECF No. 16*)

will be denied.  The case will be remanded to the Commissioner solely for the purpose of

---

[12] The examination reports submitted by Dr. Demby and Dr. Han concerned only Litz's physical
limitations.  R. 652-653, 911-919.

calculating the amount of DIB and SSI benefits owed to Litz for the period of time commencing

on May 21, 2002.  An appropriate order will follow.


s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:     Christine M. Nebel, Esquire
        Christy Wiegand
        Assistant United States Attorney

        (*Via CM/ECF Electronic Mail*)